IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

GMAC REAL ESTATE, LLC, a Delaware
Limited Liability Company,

                *Plaintiff,*

                *v.*

BLAKE REALTY, LLC, a Wisconsin Limited
Liability Company, and RYAN BLAKE,
an individual.

                *Defendants.*

CASE NO. 08 C 987

**Presiding Judge Anderson**
**Magistrate Judge Keys**

**MOTION FOR PRELIMINARY INJUNCTION**

NOW COMES, the Plaintiff, **GMAC REAL ESTATE, LLC**, a Delaware Limited

Liability Company, ("PLAINTIFF"), by and through its attorneys, FUCHS & ROSELLI, LTD., and for

its *Motion for Preliminary Injunction*, states as follows:

**INTRODUCTION**

1.     DEFENDANTS have hijacked PLAINTIFF'S franchised name to enrich themselves

through the unauthorized use of Plaintiff's name and marks.

2.     PLAINTIFF and DEFENDANTS were formerly parties to a Franchise Agreement (the

"FRANCHISE AGREEMENT") that allowed DEFENDANTS to use, invoke and market itself as

franchisee and affiliate of the PLAINTIFF.

3.     PLAINTIFF terminated the FRANCHISE AGREEMENT on September 10, 2007. With

that, PLAINTIFF at once terminated DEFENDANTS' ability to use the GMAC Real Estate trade

name, service marks and logos.

4.      Nonetheless, DEFENDANTS continue to do so in connection with the sale of real estate through their offices in Appleton and Greenbay, Wisconsin.

5.      The unlawful use of PLAINTIFF's marks and ongoing deception of the public enriches DEFENDANTS at the expense of the PLAINTIFF in violation of the FRANCHISE AGREEMENT and federal law.  It further creates the false impression that DEFENDANTS have the authority to operate as a GMAC Real Estate franchisee and that their office is affiliated with GMAC Real Estate, a well-known and respected provider of real estate sales and service.

6.      DEFENDANTS' ongoing defiant and unlawful infringement upon PLAINTIFF's marks has caused and continues to cause PLAINTIFF irreparable harm.  Only an injunction from this Court will ensure that DEFENDANTS cease their ongoing acts of infringement, and abate the irreparable harm suffered by PLAINTIFF and the dilution and tarnishing of PLAINTIFF's goodwill and reputation.

## FACTS

7.      On or about February 18, 2008, PLAINTIFF filed a *Complaint for Injunctive and Other Relief* against DEFENDANTS. (PLAINTIFF's COMPLAINT is incorporated herein by reference). DEFENDANTS were served with PLAINTIFF's COMPLAINT on or about March 5, 2008.

8.      PLAINTIFF is a widely known franchisor of a distinctive real estate system for the promotion and sale of Real Property.

9.      PLAINTIFF's service Marks and logos appear on the principal register of the United States Patent and Trademark Office. (See *Affidavit of Jim Toulon*, attached as **Exhibit 1, ¶ 4**).

10.     PLAINTIFF has the exclusive right to use and license its service marks and the derivatives thereof, as well as the distinctive real estate system for the promotion and sale of real

property to the public under PLAINTIFF's name. **Exhibit 1, ¶ 5.** PLAINTIFF and its predecessors have continuously used each of its service marks since their date of registration, and PLAINTIFF has the exclusive right to use and sublicense its service marks in the United States, including the right to sue for infringement. **Exhibit 1, ¶ 6.**

12.    Registration of PLAINTIFF's service marks are in full force and effect, un-revoked and un-cancelled pursuant to 15 U.S.C. §1065. **Exhibit 1, ¶ 7.** PLAINTIFF has given notice to the public of the registration of its service marks as provided in 15 U.S.C. §1111. **Exhibit 1, ¶ 8.**

13.    PLAINTIFF uses or has used the words "GMAC Real Estate", "GMAC Home Services", "Premiere Service" and others as variations of its brand name. **Exhibit 1, ¶ 9.** The "GMAC" mark was registered under United States' Trademark Number 2,612,792 and has been in use since August 27, 2002. **Exhibit 1, ¶ 10.** The "Premiere Service" mark was registered under United States' Trademark Number 2,914,178 and has been in use since December 28, 2004. **Exhibit 1, ¶ 11.**

14.    Through its franchise system, PLAINTIFF markets, promotes and provides service to its franchisees throughout the United States. **Exhibit 1, ¶ 12.** To identify the origin of the services it provides, PLAINTIFF allows its franchisees to use its service marks and to promote the GMAC Real Estate name. **Exhibit 1, ¶ 13.**

15.    The value of the goodwill developed in PLAINTIFF's service marks cannot be determined by a precise monetary calculation, because PLAINTIFF is a national real estate service franchise and a widely known provider of such service, the value of its goodwill is substantial.

16.    PLAINTIFF's service marks are famous in the United States. **Exhibit 1, ¶ 16.**

17.    On or about March 25 2005, PLAINTIFF entered into the FRANCHISE AGREEMENT with Blake Realty, LLC. A true copy of the FRANCHISE AGREEMENT is attached hereto and

incorporated herein as **Exhibit 2**.

18.      Ryan Blake identified himself as the sole owner of Blake Realty, LLC.  **Exhibit 2, §(C)**

19.      Pursuant to the FRANCHISE AGREEMENT, Blake Realty, LLC, was permitted to use PLAINTIFF's marks in association with a permanent real estate sales office as approved by PLAINTIFF and in a form and style authorized by PLAINTIFF.  **Exhibit 2, § 3(B)**.

20.      Pursuant to the FRANCHISE AGREEMENT, Blake Realty, LLC, agreed to pay Plaintiff certain Joining Fees and Referral Office Fees. **Exhibit 2, §10**.  Blake Realty, LLC, also agreed to pay PLAINTIFF Royalty and Advertising fees as outlined in *Exhibit A* to the FRANCHISE AGREEMENT. **Exhibit 2, §10**.

21.      Pursuant to the terms of the FRANCHISE AGREEMENT, PLAINTIFF could terminate the FRANCHISE AGREEMENT in the event of default, effective upon written notice of termination, provided PLAINTIFF served Blake Realty, LLC, with a written notice of default and allowing Blake Realty, LLC, 30 days to cure the default. **Exhibit 2, §18(C)**.

22.      DEFENDANTS' failure to pay all amounts due and owing under the FRANCHISE AGREEMENT was and is a clear default under the FRANCHISE AGREEMENT. **Exhibit 2, §10** .

23.      PLAINTIFF provided Blake Realty, LLC, with a *Notice of Default* on or about March 24, 2006. **Exhibit 3**.

24.      PLAINTIFF provided Blake Realty, LLC, a second *Notice of Default* on or about October 23, 2006. **Exhibit 4**.

25.      A third *Notice of Default* was provided to Blake Realty, LLC, on or about May 18, 2007. **Exhibit 5**.

26.      Despite Blake Realty, LLC's clear default of its obligations under the FRANCHISE

AGREEMENT and multiple *Notices of Default*, Blake Realty, LLC, and Ryan Blake have failed

and refused to cure its defaults. **Exhibit 1, ¶ 18**.

27. As a result of Blake Realty, LLC's continued default under the FRANCHISE

AGREEMENT, PLAINTIFF terminated the FRANCHISE AGREEMENT on or about September 10, 2007.

**Exhibit 6**.

28. PLAINTIFF provided Blake Realty, LLC, *Notice of Termination*, on or about

September 10, 2007. **Exhibit 6**.

29. The FRANCHISE AGREEMENT provides that upon termination of the FRANCHISE

AGREEMENT, DEFENDANT shall:

> "within 10 days of such termination, discontinue use of all Marks, including the words 'GMAC Real Estate', or any derivation of those words, and refrain from holding itself out to the public in a manner that would suggest that it is a licensee or former licensee of GMAC Real Estate … In addition, if Strategic-Partner has used the words 'GMAC Real Estate' as part of its internet domain name and such use has not been terminated within 10 days of termination of this Agreement, Strategic-Partner will be deemed to have assigned its rights in such domain name to GMAC Real Estate, and GMAC Real Estate may take whatever actions it deems appropriate to terminate such domain name and Strategic-Partner's right to use the same;"

**Exhibit 2, §19(A)(1)**.

30. The FRANCHISE AGREEMENT further provides that in the event of termination,

DEFENDANTS shall:

> "Surrender to GMAC Real Estate, or at the option of GMAC Real Estate, destroy all signs and documentation bearing the Marks, including yard signs, letterheads, advertising and marketing materials, business cards, manuals, training materials, client promotion materials and the like."

**Exhibit 2, §19(A)(3)**.

31. Despite PLAINTIFF's termination of the FRANCHISE AGREEMENT after three

uncured Notices of Default, DEFENDANTS have continued to misuse PLAINTIFF's service marks to

induce the public to use their real estate services for the promotion and sale of real property. **Exhibit 1, ¶ 17**.

32.    Despite the termination of the FRANCHISE AGREEMENT and receiving notice of that termination, DEFENDANTS have continued to hold themselves out to the public as a franchisee in good standing or other affiliate of PLAINTIFF to induce the public to use their real estate services for the promotion and sale of real property. **Exhibit 1, ¶ 19**.

33.    PLAINTIFF has made and continues to make all reasonable effort to obtain relief directly from DEFENDANTS for their continuing infringements of their marks, but without success. **Exhibit 1, ¶ 20**.

34.    As recently as January 23, 2008, DEFENDANTS continued to display signs prominently featuring PLAINTIFF's marks in connection with its real estate sales office. **Exhibit 7**.

35.    As recently as March 13, 2008, DEFENDANTS maintained a web site, accessible to the general public, http://www.blakegmac.com, that improperly indicates that DEFENDANTS real estate sales office is affiliated with PLAINTIFF and contains multiple uses of PLAINTIFF's marks. **Exhibit 8**.

36.    As recently as March 13, 2008, DEFENDANTS advertised real estate listings using PLAINTIFF's marks[1] and improperly indicating to the public at large that DEFENDANTS are affiliated with PLAINTIFF. **Exhibit 9**.

---

[1]*See*:http://greenbay.2.homescape.com/SCS/listing_details.jsp?calling_page=listing_result_list&affiliate_name=greenbay&tab_num=1&geo_area_id=67992&listing_result_page=listing_result_list&community_sort_id=1202484647236&search_by_type=resale_mls%2Cresale_class%2Cresale%2Cnew_const%2Cnew_class%2Cnew_mls%2Cnew_ecom_agent%2Cnew_ecom_broker%2Cnew_ecom_bldr%2Cnew_ecom_owner%2Cresale_ecom_agent%2Cresale_ecom_broker%2Cresale_ecom_bldr%2Cresale_ecom_owner&display_default_state_id=67923&page_num=5&filter_product_id=28589969;
*See also:*
http://ww2.homescape.com/SCS/search.jsp?calling_page=listing_details&affiliate_name=appleton&filter_party_id=471112&reporting_search_name=HS2.0+Details+promo+View+our+Listings

## ARGUMENT

37.    To obtain a preliminary injunction, a plaintiff must show that: (1) plaintiff has a reasonable likelihood of success on the merits; (2) no adequate remedy at law exists; (3) plaintiff will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) the injunction will not harm the public interest. *Goodman v. Illinois Dept. of Financial and Professional Regulation,* 430 F.3d 432, 437 (7th Cir.2005). A preliminary injunction "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Id.* Here, PLAINTIFF has clearly met each of the threshold requirements and a preliminary injunction should be entered to enjoin DEFENDANTS' continued misuse and misappropriation of PLAINTIFF's marks.

**I.    There is a substantial likelihood that PLAINTIFF will succeed on its claim.**

38.    To determine whether a plaintiff has a likelihood of success on the merits, the court must assess whether the plaintiff has "a greater than negligible chance of winning...." *AM General Corp. v. DaimlerChrysler Corp.,* 311 F.3d 796, 804 (7th Cir.2002). Here it is clear that DEFENDANTS' unauthorized used of PLAINTIFF's marks is in violation of sections 32, 43(a) and 43(c) of the Lanham Act and PLAINTIFF has a substantial likelihood of success on these claims.

**a.    DEFENDANTS' use of PLAINTIFF's marks violates §32 of the Lanham Act.**

39.    To establish a violation of §32 of the Lanham Act, PLAINTIFF must demonstrate that it has a protectable mark and that DEFENDANTS' use of that mark creates a likelihood of confusion concerning the origin of the goods or services at issue. 15 U.S.C. §1114(a); *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.,* 128 F.3d 1111, 1114 (7th Circ. 1997); *Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 461 (7th Cir.2000). Here, PLAINTIFF has presented ample evidence to meet both of these threshold requirements.

7

40.    PLAINTIFF's marks are valid, incontestable and entitled to the protections of this Court as the marks DEFENDANTS are infringing upon are registered on the principal register of the US Patent and Trademark Office. PLAINTIFF has the exclusive right to license its name, design, logo, service marks as well as its distinctive system for the promotion and sale of real estate sales under its name. PLAINTIFF's have used the marks in question since the date of register and these marks are in full force and effect pursuant to 15 U.S.C. §1065. PLAINTIFF has given notice to the public of the registration of its marks as required by 15 U.S.C. §1111, which provides *prima facie* evidence of the ownership of these marks and the exclusive right to their use. 15 U.S.C. §1115(a).

41.    DEFENDANTS' use of the same marks that it previously used, under license and permission of PLAINTIFF as PLAINTIFF's franchisee, at the same location to promote the same services creates a manifest likelihood of confusion as provided under the Lanham Act. The likelihood of confusion exists as a matter of law if a licensee continues to use marks owned by the licensor after termination of the license. *Bunn-O-Matic Corp. v. Bunn Coffee Service, Inc.*, 88 F.Supp.2d 914, 922 (C.D. Ill. 2000). *See also Gorenstein Enter., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 435 (7th Cir.1989); *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492 (11th Circ. 1983), which held that "Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks."; *Ramada Franchise Systems, Inc. v. Royal Vale Hospitality of Cincinnati*, 2005 WL 435263 at 15 (N.D. Ill. 2005); *Dunkin' Donuts Inc. v. Donuts, Inc.*, 2000 WL 1808517 at 4 (N.D. Ill. 2000); *Dunkin' Donuts, Inc. v. Towns Family, Inc.*, 1996 WL 328018 at 5 (N.D. Ill. 1996).

b.    DEFENDANTS' use of PLAINTIFF'S marks violates §43(a) of the Lanham Act

42.    To prevail on a Lanham Act claim, a plaintiff must establish that (1) its mark is protectable, and (2) the defendant's use of the mark is likely to cause confusion among consumers. *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 638 (7th Cir.2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir.2000). Here, PLAINTIFF'S registration of their mark provides *prima facie* evidence that it is protectable. 15 U.S.C. §1115(a).

43.    DEFENDANTS continued use of PLAINTIFF's marks in marketing and promoting their real estate sales services infringes upon PLAINTIFF's protectable mark and is clearly likely to cause confusion among consumers. As indicated above, there is a very high likelihood of confusion among customers if DEFENDANTS, who are former franchisees of PLAINTIFF, continue to use PLAINTIFF's marks.

c.    DEFENDANTS' use of PLAINTIFF'S marks violates §43(c) of the Lanham Act

44.    DEFENDANTS' ongoing infringement upon PLAINTIFF's protected interest by its improper use of PLAINTIFF's marks has lessened and continues to lessen PLAINTIFF's ability to identify and distinguish the services PLAINTIFF provides. To prevail on a trademark dilution claim a plaintiff must establish: "(1) that the mark is famous; (2) that [the defendant] adopted the mark after the mark became famous; (3) the infringer diluted the mark; and (4) the defendant's use is commercial and in commerce." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 811 (7th Cir.2002). Here, PLAINTIFF has established each of these requirements. PLAINTIFF's mark is famous and is used internationally to promote and distinguish the real estate services it provides from those of PLAINTIFF's competitors. There is no question that

DEFENDANTS adopted PLAINTIFF's marks after they became famous. Nor is there any question that DEFENDANTS use of these marks is commercial.

45.     Finally, there is no dispute that DEFENDANTS' continued use of PLAINTIFF's marks has and continues to dilute those marks. The Seventh Circuit has recognized that a franchisor is powerless to demand and ensure the continued quality of an ex-franchisee's operations, after terminating a franchisee. *Gorenstein*, 874 F.2d at 435. DEFENDANTS' continued use of PLAINTIFF's marks where PLAINTIFF cannot maintain or ensure the quality of DEFENDANTS' operations will dilute PLAINTIFF's marks.

## II.     PLAINTIFF has no adequate remedy at law

46.     The Seventh Circuit has long recognized that it is self-evident that a trademark owner has no adequate remedy at law to redress infringement, having found that "the damages occasioned by trademark infringement are by their very nature irreparable and not susceptible of adequate measurement for remedy at law." *Processed Plastic Co. v. Warner Communications, Inc.*, 675 F.2d 852, 858 (7th Circ. 1982). Unless DEFENDANTS are enjoined from their ongoing infringement upon PLAINTIFF's marks, PLAINTIFF will continue to suffer irreparable harm including lost profits, loss of its business reputation and goodwill. Further, there is a high likelihood that the distinctive quality of PLAINTIFF's marks will be diluted, and this harm is nearly impossible to calculate. The only means to protect PLAINTIFF from this ongoing harm is through preliminary injunctive relief. *See eg. Dunkin' Donuts v. Benita Corp.*, 1998 WL 67613 at 5, *See also Gateway Eastern Ry. Co. v. Terminal R.R. Ass'n of St. Louis*, 35 F.3d 1134, 1140 (7th Cir.1994) ("showing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages.").

### III.    The ongoing injury to PLAINTIFF outweighs any potential injury that an injunction may cause DEFENDANTS

47.    The actual and continuing harm suffered by PLAINTIFF far outweighs any potential harm to DEFENDANTS that may be occasioned by entry of a preliminary injunction. The Seventh Circuit has employed a "sliding scale" approach in balancing the relative harm to the parties by a requested injunction, that is, "the stronger the case on the merits, the less irreparable harm must be shown." *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1172 (7th Cir.1997). Further, it is clear that the balance of equities lies in favor of granting a preliminary injunction in those situations where a former franchisee continues to use a franchisor's marks. *See Bunn-O-Matic Corp.*, 88 F.Supp.2d at 922 (C.D. Ill. 2000); *Gorenstein Enter., Inc.*, 874 F.2d at 435 (7th Cir.1989); *Burger King Corp.*, 710 F.2d at 1492 (11th Circ. 1983); *Ramada Franchise Systems, Inc.*, 2005 WL 435263 at 15 (N.D. Ill. 2005); *Dunkin' Donuts Inc. v. Donuts, Inc.*, 2000 WL 1808517 at 4 (N.D. Ill. 2000); *Dunkin' Donuts, Inc. v. Towns Family, Inc.*, 1996 WL 328018 at 5 (N.D. Ill. 1996).

48.    Here, PLAINTIFF has demonstrated that they have a very strong case on the merits and that they have an equally great risk of enduring continuing and irreparable harm unless a preliminary injunction is granted. Even after being served with PLAINTIFF's COMPLAINT, DEFENDANTS have refused to stop using PLAINTIFF's Marks. An injunction is the only means available to PLAINTIFF to protect its marks. Whereas an injunction is not likely to cause any harm to DEFENDANTS as they can continue to operate their business, but do so without infringing upon PLAINTIFF's marks. Further, any injury DEFENDANTS may suffer as a result of a preliminary injunction can readily be compensated by monetary damages. *Cal City Optical, Inc., v. Pearel Vision, Inc.*, 1994 WL 114859 at 1 (N.D. Ill. 1994).

IV.    **The public interest will be served by an injunction prohibiting DEFENDANTS' use of PLAINTIFF's marks**

49.    If DEFENDANTS' ongoing infringement of PLAINTIFF's marks is not enjoined, there is a very real and very high probability that the public will be deceived into believing that DEFENDANTS remain in good standing and operate as an authorized franchisee of PLAINTIFF, when this impression is clearly false. The only means to prevent this ongoing deception of the public is through a preliminary injunction.

V.    **PLAINTIFF should be required to post only a minimal bond**

50.    Although FRCP 65(c) requires that security be posted before an injunction is issued, given the very high likelihood of PLAINTIFF's success on the merits of its claim, coupled with the ongoing and irreparable nature of the injuries PLAINTIFF has and continues to suffer, only a minimal bond should be required by this Court.

**WHEREFORE**, the Plaintiff, GMAC Real Estate, LLC, respectfully requests that this Honorable Court enter an *Order*:

A) Ordering DEFENDANTS preliminarily and permanently enjoined from any and all use or misuse of its service marks or otherwise infringing upon the exclusive rights granted PLAINTIFF in its Marks;

B) Ordering DEFENDANTS to account for any and all revenue derived as a result of marketing, selling, or promoting its real estate services through and with PLAINTIFF's Marks;

C) Ordering DEFENDANTS to promptly surrender to PLAINTIFF or destroy all items in their possession, custody or control that bear PLAINTIFF's Marks, including but not limited to yard signs, letterheads, advertising and marketing materials, business cards, manuals, training materials, client promotion materials and the